UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FERNANDO PEREZ SALES, | Case No. 2:25-cv-01819-RFB-BNW |
| Petitioner, | **ORDER** |
| v. | |
| JOHN MATTOS, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner Fernando Perez Sales's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center in the custody of the Federal Respondents. For the following reasons, the Court grants the Petition.

**I.    INTRODUCTION**

This case is one of a growing number before this court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The policy is based on a new interpretation of the Immigration

---

[1] This Court has already granted petitioners relief—both preliminary and habeas—in fourteen similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL

and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as requiring the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention is mandatory no matter how long a noncitizen has resided in the country, and without any due process to ensure the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See e.g., Escobar Salgado v. Mattos, 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *22 (D Nev. Nov. 17, 2025) (finding that "the text and canons of statutory interpretation, legislative history, and long history of consistent agency practice, demonstrate . . . that the government's new interpretation and policy under [§ 1225(b)(2)(A)], is unlawful"); see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and

---

3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

longstanding agency practice.") (collecting cases).

Petitioner challenges Federal Respondents' application of this policy and the regulatory automatic stay mechanism to prolong his detention for months, despite an immigration judge's finding that the government failed to demonstrate his detention is justified, stating that Petitioner "is not subject to mandatory detention under Section 235(b)." Respondents contend that the immigration judge erred in ordering Petitioner's release pursuant to section 8 U.S.C. § 1226(a) and assert that Petitioner is lawfully detained pursuant to 8 C.F.R. § 1003.19(i)'s automatic stay and subject to mandatory detention for the duration of removal proceedings under 8 U.S.C. § 1225(b)(2).

For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under the INA and violates his due process rights. The Court thus orders his immediate release on bond as ordered by the immigration judge.

## II. BACKGROUND

### A. Petitioner Fernando Perez Sales

The Court makes the following findings of fact relevant to Petitioner. Petitioner is a 24-year-old who entered the United States without inspection as an unaccompanied child in 2019. His entry was to reunify with his father after facing abuse and neglect by his mother in Guatemala. He has been in DHS custody since June 2025 and is currently detained at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada.

In August 2022, Petitioner applied for Special Immigrant Juvenile Status (SIJS), which provides Petitioner a pathway to permanent residency in the United States.[4] USCIS approved the petition and granted Petitioner both SIJS status and deferred action. This approval was based on the abuse and mistreatment, which included regular beatings with sticks, belts, shoes, or bare hands, and an utter lack of basic necessities, that Petitioner had experienced while living with his

---

[4] This followed findings by the California Superior Court for Alameda County, in 2022, granting custody of Mr. Perez Sales to his father on the basis that "[a] forced return to Guatemala and separation from his father poses serious risk to Fernando's health, safety, and welfare." ECF No. 1-4.

mother in Guatemala. Individuals with SIJS may apply for lawful permanent residence when specially designated visas, which are currently backlogged, are available. Once said visa is available, Petitioner is eligible to apply. Because this visa was not immediately available to Petitioner, USCIS granted Petitioner deferred action, which serves to shield Petitioner from removal until he is able to apply for permanent residence. Petitioner retains that deferred action status at present.

Petitioner has also filed an asylum application with USCIS under the Trafficking Victims Protection Reauthorization Act (TVPRA).[5] At the time of the Petition's filing, Petitioner had waited over three months for USCIS to schedule an interview for his application to be adjudicated. The interview had been scheduled for September 18, 2025, however, audio difficulties caused the asylum officer to end the interview and notify Petitioner that the interview would be rescheduled. At the time of the Petition's filing, USCIS had not yet re-scheduled the interview.

On June 4, 2025, Petitioner was arrested in Douglas County, Nevada, for selling fruit in a Walmart parking lot without a business license. Petitioner was convicted, on June 10, 2025, of misdemeanor No Traveling Merchant Permit under Douglas County Code § 5.24.170 and sentenced to 10 days in jail. ICE officers located Petitioner while he was in the Douglas County Jail and placed him into removal proceedings through the issuance of a Notice to Appear on June 11, 2025.

Petitioner requested a bond hearing before the immigration court, and on August 26, 2025, Immigration Judge Daniel Daugherty ordered Petitioner's release on bond in the amount of $1,500—the minimum statutory amount. The IJ found Petitioner presented neither a flight risk nor danger to the community and further concluded that Petitioner is not subject to mandatory

---

[5] Based on a class settlement, which Petitioner is a part of, individuals who were deemed unaccompanied children at the time of apprehension by immigration officials are entitled to have their asylum applications adjudicated by USCIC even if they no longer meet the legal definition of "unaccompanied child"; for example, if an individual surpasses the age of 18. JOP v. DHS, 19-cv-1944 at 7-8 (D. Md. filed July 30, 2024); see also John Lafferty, Chief, USCIS Asylum Division, Updated Procedures for Determination of Initial Jurisdiction over Asylum Applications Filed by Unaccompanied Alien Children and Implementation of the J.O.P. Settlement Agreement, (signed January 30, 2025 but issued on February 24, 2025), https://www.uscis.gov/sites/default/files/document/memos/JOP_UAC_Procedures_Memo_1.30.25.pdf.

1   detention under 8 U.S.C. § 1225(b)(2), noting that he entered the United States as an
2   unaccompanied child. That same day, DHS filed a Notice of Intent to Appeal the IJ's order to the
3   BIA and invoked the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2) by filing a
4   Form EOIR-43. DHS reported that it perfected its appeal on September 8, 2025, including an
5   addendum brief and certification by a DHS official. On September 11, 2025, after the BIA's
6   decision in Hurtado, a second IJ, Judge Glen Baker, summarily concluded that Petitioner's
7   previous bond decision "has been superseded," by Hurtado. DHS's appeal of the first bond
8   determination with the BIA remained pending as of Respondents' Response.

9   Petitioner has struggled to access counsel and suffered from mental and physical harm
10  while detained. Counsel for Petitioner reports having to wait eight to nine days for legal calls, and
11  Petitioner has stated that even when he vomited blood, NSDC medical staff was unable to assist
12  him. Further, Petitioner is consistently in poor emotional and mental health.

13  **B. Legal Background**

14  Mr. Perez Sales challenges his ongoing detention under § 1225(b)(2) as unlawful and
15  argues that the mandatory detention statute and policy are inapplicable to him. The Court
16  incorporates by reference its discussion and findings regarding the legal background of detention
17  authority under the INA, the automatic stay provision under 8 CFR § 1003.19(i)(2), and the
18  government's new mandatory detention policy, as provided in its recent ruling in Escobar Salgado.
19  2025 WL 3205356, at *2-6.

20  Petitioner also argues that if this Court were to conclude that the new interpretation of §
21  1225(b)(2) mandates detention of all noncitizens who have not been admitted into the United
22  States, Mr. Perez Sales's continued detention would nonetheless be unlawful because he entered
23  the U.S. as an unaccompanied child. Petitioner argues that would make the new § 1225(b)(2)
24  interpretation inapplicable to him, and he would instead be subject to the TVPRA's detention and
25  statutory scheme. The TVPRA operates to provide a separate detention scheme—distinct from that
26  which exists for applicants for admission—for noncitizens who enter the United States as
27  unaccompanied children, which directs that children in the custody of the Secretary of Health and
28  Human Services (HHS) be placed in the "lease restrictive setting" for detention. See 8 U.S.C. §

- 5 -

1232(c)(2)(A). An "unaccompanied child" is defined as an individual without lawful immigration status, under the age of eighteen, with "no parent or legal guardian in the United States . . . available to provide care and physical custody." 6 U.S.C. § 279(g)(2). The TVPRA states that unaccompanied children must be "promptly placed in the least restrictive [detention] setting," which may include release (without bond) to "a suitable family member." 8 U.S.C. § 1232 (c)(2)(A). Congress extended specific protections to unaccompanied children who reach adulthood while in the custody[6] of HHS: if a minor described in § 1232 (c)(2)(A) reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary "shall consider placement in the least restrictive setting available," taking into account the individual's danger to self, danger to community, and risk of flight. 8 U.S.C. § 1232 (c)(2)(B).

### III.     PROCEDURAL HISTORY

On September 25, 2025, Petitioner Perez Sales filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Thomas E. Feeley, in his official capacity as the Field Office Director of the Salt Lake City Field Office of U.S. ICE's Enforcement and Removal Operations Division (ERO); John Mattos, in his official capacity as warden of NSDC; Kristi Noem, in her official capacity as Secretary of DHS; and Pamela Bondi, in her official capacity as Attorney General of the United States. ECF No. 1.

This case was initially assigned to the Honorable Judge Jennifer A. Dorsey, but on October 2, 2025, was transferred to the undersigned judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 7. On October 6, 2025, counsel for Respondents, and on behalf of Interested Party United States Attorney for the District of Nevada, filed a notice of appearance. ECF No. 8. Respondents' counsel sought two extensions of time to respond to the Petition, the first of which was opposed by Petitioner. ECF Nos. 14, 15, 20. On October 28, 2025, Respondents filed their Response to the Petition, arguing

---

[6] Our sister district court has found that §§ 1232(c)(2)(A)-(B)'s protections extend to individuals who were in the legal, not physical, custody of HHS at the time they attained majority, which Petitioner cites to in support of their argument that the TVPRA should govern Petitioner's detention. Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *9 (S.D.N.Y. June 12, 2018). ECF No. 1, at 20

for its denial, six (6) days after the Response was due. ECF Nos. 6, 18. This Court held a hearing on the instant matter on October 30, 2025.

The Court's Order follows.

### IV.  LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citing 28 U.S.C. § 2243).

### V.  DISCUSSION

#### A. Jurisdiction

As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10. Respondents do

not challenge this Court's jurisdiction over the instant matter.

### B. The Automatic Stay

Before turning to Petitioner's challenges to the lawfulness of his detention under the INA, the Court first addresses Petitioner Perez Sales's detention pursuant to the automatic stay under 8 C.F.R. § 1003.19(i)(2). This Court has already found the automatic stay is unconstitutional because it violates the procedural and substantive due process rights of noncitizen detainees like Petitioner Perez Sales. See Escobar Salgado, 2025 WL 3205356, at *10 (D. Nev. Nov. 17, 2025); Herrera v. Knight, _ F. Supp. 3d. _, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025). The Court incorporates by reference its reasoning and holding as to the automatic stay from these cases to this case. Id. Thus, the Court finds that Respondents' continued detention of Petitioner pursuant to DHS's authority, under 8 C.F.R. § 1003.19(i)(2), to stay IJ Daugherty's bond release order is unconstitutional for the same reasons discussed in and incorporated by referenced from Escobar Salgado and Herrera. Id.

The Court further finds that it is not clear based on the record that IJ Baker rescinded the original bond order, or if DHS's appeal of that order before the BIA is still pending. To the extent that the automatic stay is still in effect, the Court finds, as indicated, that Petitioner Perez Sales's detention on that basis is unlawful.

### C. Lawfulness of Petitioner's Detention under the INA

Petitioner Perez Sales challenges the government's new interpretation of the INA, and his detention thereunder, as unlawful. While Respondents assert that § 1225(b)(2) applies to Petitioner and mandates his detention without the ability for release on bond, Petitioner counters that Respondents' interpretation of the statutory scheme of §§ 1225 and 1226 is flawed. This Court agrees with Petitioner and incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

Petitioner Perez Sales is a longtime U.S. resident, having arrived in the United States six years ago as a minor. He was arrested and detained by ICE in Douglas County, Nevada, far from any port of entry. In addition, Petitioner's criminal history is limited to a single misdemeanor conviction for "No Traveling Merchant Permit," related to the unlicensed selling of fruit in a

Walmart parking lot. He has no convictions that would subject him to detention under § 1226(c). Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and policy under that provision is unlawful. Escobar Salgado v. Mattos. 2025 WL 3205356, at *10-22.

### D. Due Process

Petitioner also challenges his ongoing detention without ability for release on bond under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge to his detention on this basis.

Respondents assert that Petitioner's due process rights are not offended by his continued detention without ability for release on bond. Respondents cite to Jennings v. Rodriguez for the proposition that "Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." ECF No. 18 at 19 (citing Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)). However, in this case, an immigration judge has already found Petitioner does not pose a flight risk nor a danger to the community, defeating that argument. Respondents further cite to Demore, where the Supreme Court upheld detention without bond hearings for a specific class of noncitizens: those whose detention is governed by § 1226(c). Id. (citing Demore, 538 U.S. at 513, 526-57). However, Demore's holding was based on the government establishing a particular interest in detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where Petitioner has a sole misdemeanor conviction outside the scope of § 1226(c). Despite these arguments, the government has not shown it has any individualized purpose in continuing to detain

Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the ability for release on bond in violation of his procedural and substantive due process rights.

### 1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without ability for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond, particularly given that this decision to continue detention is despite an IJ's determination

that bond is warranted in Petitioner's case. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing where *bond was denied* after presentation of the evidence, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond under the government's policy. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated by the fact that IJ Daugherty held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for his detention. Accordingly, it is certain that Petitioner is being arbitrarily and unjustifiably deprived of his liberty through his continued detention.

The additional procedures in this case would simply be a recognition of, and respect for, existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community to continue his detention for the pendency of removal proceedings. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs heavily in favor of granting Petitioner recognition of his procedural protections under

§ 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by respecting an individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and therefore, his detention without the ability for release on bond violates his procedural due process rights.

2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a

special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty following the IJ's grant of bond. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary detention is grave cause for concern. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### E. Applicability of the TVPRA

Because the Court finds that Petitioner is not subject to mandatory detention under § 1225(b)(2), as he is not an "applicant for admission," but rather a longtime resident outside the scope of § 1225(b)(2)'s scheme, who has already been granted bond under § 1226(a) procedures, it need not decide the question of whether the fact that Petitioner entered the United States as an unaccompanied child further exempts him from mandatory detention under § 1225(b)(2). Accordingly, the Court decides this case without reaching the merits of whether Petitioner is subject to the separate detention scheme under the TVPRA.[7]

### F. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

///
///
///

---

[7] The Court notes that the TVPRA specifically governs procedures for unaccompanied children in the custody of HHS (and the detention of adult noncitizens who were in HHS custody when they attained majority). While Petitioner states that he was "released from HHS custody," there is no other indication or evidence from Petitioner that he was ever in the physical or legal custody of HHS, only a determination from a California court in 2022 that Petitioner be placed in the custody of his father. ECF No. 1 at 20.

## VI. CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Fernando Perez Sales's Petition for Writ of Habeas Corpus is **GRANTED**.

Respondents are **ORDERED** to release Petitioner from custody by **2:00 p.m. on November 20, 2025**. Petitioner shall be subject to the bond and other conditions imposed by the IJ.

**IT IS FURTHER ORDERED** that Petitioner shall have until **December 3, 2025** to satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

**DATED:** November 19, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**